**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 20-cv-02838-NYW-STV

KATHRYN PALM,

     Plaintiff,

v.

ESURANCE PROPERTY AND CASUALTY INSURANCE CO.,

     Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Esurance's Motion for Summary Judgment (the "Motion" or "Motion for Summary Judgment") [Doc. 40]. Upon review of the Motion and the related briefing, the applicable case law, and the record before the Court, the Court concludes that oral argument will not materially assist in the resolution of this matter. For the reasons set forth below, the Motion for Summary Judgment is respectfully **DENIED**.

## BACKGROUND

This case arises out of an automobile collision that occurred on October 21, 2017 involving Plaintiff Kathryn Palm ("Plaintiff" or "Ms. Palm") and John Dahmer ("Mr. Dahmer"). [Doc. 6 at ¶ 6]. At the time of the collision, Ms. Palm was insured by Defendant Esurance Property and Casualty Insurance Company ("Defendant" or "Esurance"). [*Id.* at ¶ 7]. During the claims-handling process, there arose a dispute over who was entitled to the $25,000 liability payment provided by Ms. Palm's insurance policy: Mr. Dahmer or Medicaid,[1] which had paid for Mr.

---

[1] "Medicaid is a cooperative federal-state program that provides financial assistance to states to subsidize certain costs of medical treatment for low-income individuals." *Christy v. Ibarra*, 826

Dahmer's medical treatment after the collision. *See, e.g.*, [*id.* at ¶¶ 10–13]. Esurance represented to Mr. Dahmer's counsel that it intended to file an interpleader action to resolve the dispute, [*id.* at ¶ 14], and filed that action on November 9, 2018. [*Id.* at ¶ 19]. Then, on December 13, 2018, Mr. Dahmer sued Ms. Palm in state court to recover for his damages sustained in the collision. [*Id.* at ¶ 21]. The interpleader action was dismissed after Mr. Dahmer and Medicaid settled their dispute, *see* [Doc. 40 at ¶ 33], but the tort action proceeded to trial, and in March 2020, judgment was entered against Ms. Palm in the amount of $3,750,131.65.[2] [Doc. 1 at ¶ 24].

On July 22, 2020, Esurance filed a declaratory judgment action in this District against Ms. Palm and Mr. Dahmer, Civil Action No. 20-cv-02170-PAB-STV (the "Declaratory Judgment Action"), seeking a judgment "declaring that the [interpleader action] was proper under the circumstances" and that the filing of the interpleader action "did not constitute common law bad faith under the law of Colorado or a breach of any insurance industry standard." [ECF No. 1 at ¶ 74].[3] Ms. Palm subsequently initiated this instant action in state court on August 19, 2020, and on September 18, 2020, Esurance removed the case to federal court. [Doc. 1; Doc. 6]. In this lawsuit, Ms. Palm asserts one claim of common law bad faith, arguing that Esurance breached its duty of good faith and fair dealing by, *inter alia*, failing to settle Mr. Dahmer's claim against her, filing the interpleader action, and exposing her to significant liability in excess of the Policy limits. [Doc. 1 at ¶ 33]. On October 28, 2020, the Honorable Philip A. Brimmer granted Esurance's

---

P.2d 361, 363 (Colo. App. 1991). The Parties consistently refer to the state agency that administers this program as "Medicaid," *see* [Doc. 40 at ¶ 7; Doc. 45 at 17], and the Court does the same here.

[2] The jury awarded Mr. Dahmer $2,061.682.49 in damages. The state court awarded Mr. Dahmer $642,952.47 in pre-judgment interest and $45,496.69 in costs. [Doc. 6 at ¶¶ 26–27].

[3] When the Court refers to the filings made in the Electronic Case Filing ("ECF") system in this action, it uses the convention [Doc. ____]. When the Court refers to the ECF docket number in the Declaratory Judgment Action, it uses the convention [ECF No. ____]. In either case, the Court identifies the page number as assigned by the ECF system.

Unopposed Motion to Consolidate Related Cases and consolidated this case with the Declaratory Judgment Action, which was named the lead case.  [Doc. 12; Doc. 18].

On September 30, 2021, Chief Judge Brimmer granted Ms. Palm's motion to dismiss Esurance's claim in the Declaratory Judgment Action upon declining to exercise jurisdiction over the declaratory judgment claim.  *See* [ECF No. 49]; *Esurance Prop. & Cas. Ins. Co. v. Palm*, No. 20-cv-02170-PAB-STV, 2021 WL 4477686, at *8 (D. Colo. Sept. 30, 2021).  After judgment was entered in the Declaratory Judgment Action, Judge Varholak ordered that this case was no longer consolidated with the Declaratory Judgment Action.  [Doc. 19; ECF No. 51].  Since then, the litigation has proceeded in the normal course.[4]

Esurance filed the instant Motion on May 10, 2022.  [Doc. 40].  The matter has since been fully briefed, [Doc. 45; Doc. 57], and is ripe for adjudication.

## UNDISPUTED MATERIAL FACTS

The below material facts are drawn from the Parties' briefing and the record before the Court and are undisputed unless otherwise noted.

1.      On October 21, 2017, Ms. Palm drove her vehicle into John Dahmer's motorcycle, which caused severe injuries to Mr. Dahmer.  [Doc. 40 at ¶ 2; Doc. 45 at 3; Doc. 40-2 at 1].

2.      Ms. Palm was arrested and charged with four criminal counts: vehicular assault – driving under the influence ("DUI") under Colo. Rev. Stat. § 18-3-205(1); two DUI counts under Colo. Rev. Stat. § 42-4-1301; and careless driving.  [Doc. 40 at ¶ 3; Doc. 45 at 3; Doc. 40-4 at 1].

3.      In April 2018, Ms. Palm pleaded guilty to vehicular assault and one DUI count, and the other two counts were dismissed.  [Doc. 40 at ¶ 4; Doc. 45 at 3; Doc. 40-5 at 1, 23–24].

---

[4] The case was reassigned to the undersigned on August 4, 2022 upon her appointment as a United States District Judge.  [Doc. 54].

4.     Ms. Palm was sentenced to two years' probation for the DUI conviction and received a two-year deferred sentence on the vehicular assault conviction.  After she completed her sentences, the criminal court withdrew her guilty plea on the vehicular assault conviction and dismissed that count.  [Doc. 40 at ¶¶ 4–5; Doc. 45 at 3; Doc. 40-5 at 13–17; Doc. 40-6].

5.     At the time of the collision, Ms. Palm held an automobile insurance policy (the "Policy") through Esurance.  The Policy states that Esurance "ha[s] no duty to defend and do[es] not provide Liability Coverage for any 'insured'[] . . . For 'bodily injury' or 'property damage' that results from the criminal acts of an 'insured'."  [Doc. 40 at ¶ 1; Doc. 45 at 3; Doc. 40-1 at 2, 3 (emphasis omitted)].[5]

6.     The Policy contained a bodily injury liability limit of $25,000 per person.  [Doc. 40 at ¶ 1; Doc. 45 at 3; Doc. 40-1 at 3].

7.     At the time of the collision, Mr. Dahmer was insured through Medicaid.  Medicaid paid for Mr. Dahmer's medical treatment.  [Doc. 40 at ¶ 6; Doc. 45 at 3; Doc. 40-8 at 12].

8.     On December 12, 2017, Medicaid sent a letter to Esurance informing Esurance that Medicaid "ha[d] a right of recovery against the liability of any third party for the cost of medical services and care arising out of the injury, disease, or disability of a Medicaid recipient."  [Doc. 40 at ¶ 8; Doc. 45 at 3; Doc. 40-9 at 2].

9.     On December 21, 2017, Mr. Dahmer, through counsel, sent Esurance a demand for the amount equal to Ms. Palm's liability limit.  [Doc. 40 at ¶ 9; Doc. 45 at 3; Doc. 40-10].

---

[5] Unless otherwise noted, all emphases contained in the Policy language have been omitted when reproduced in this Memorandum Opinion and Order.

10.     On December 26, 2017, Esurance answered by offering the $25,000 policy limit in exchange for a release of Mr. Dahmer's claims against Ms. Palm.  [Doc. 40 at ¶ 11; Doc. 45 at 3; Doc. 40-12 at 1].

11.     Mr. Dahmer's counsel did not formally respond to the settlement offer; in February 2018, Mr. Dahmer's counsel informed Esurance that she had not been given permission to settle the claim but was "working on it."  [Doc. 40 at ¶ 12; Doc. 45 at 3; Doc. 40-8 at 7].

12.     On April 18, 2018, Mr. Dahmer's counsel informed Esurance that she was no longer representing Mr. Dahmer and that Esurance should contact him directly.  [Doc. 40 at ¶ 13; Doc. 45 at 3; Doc. 40-13].

13.     On August 6, 2018, Medicaid notified Esurance that it had paid $97,098.62 toward Mr. Dahmer's medical bills and asserted that Colo. Rev. Stat. § 25.5-4-301 "establish[es] a lien for all such medical assistance provided against any amounts recovered in a suit or claim against a liable third party."  [Doc. 40 at ¶ 16; Doc. 45 at 3; Doc. 40-14].

14.     On August 31, 2018, Medicaid sent a letter to Esurance "requesting payment of the proceeds that are available from Ms. Palm's policy," invoking Colo. Rev. Stat. §§ 25.5-4-205(4)(a), 25.5-4-301(4), 25.5-4-301(4)(5).  [Doc. 40 at ¶ 18; Doc. 45 at 3; Doc. 40-15 at 1–2].

15.     On September 17, 2018, Mr. Dahmer, through counsel, wrote to Esurance that he "would like to accept Esurance's offer to pay Ms. Palm's $25,000 policy limit to resolve this claim."  The email further stated that counsel was "aware that Medicaid has asserted a lien and ha[d] been working with them to resolve it.  We will hold the money in trust until the lien is resolved." [Doc. 40 at ¶ 20; Doc. 45 at 3; Doc. 40-17 at 1].  In the alternative, counsel offered "the alternative course of creating a qualified settlement fund, an express purpose of which is to hold

encumbered funds, into which the settlement proceeds could be deposited." [Doc. 45 at 5, ¶ 8; Doc. 57 at 1; Doc. 45-5 at 2].

16.     That same day, Mr. Dahmer's counsel emailed Medicaid and stated that Mr. Dahmer had "decided to accept the limit of the at-fault driver's liability policy" and asked for Medicaid's position "as to the amount of the lien, if any, asserted with respect to that benefit." Medicaid responded that it was entitled to the full $25,000. [Doc. 40 at ¶ 22; Doc. 45 at 3; Doc. 40-18 at 1–2].

17.     Esurance then asked Medicaid to confirm that Mr. Dahmer's proposal that Esurance pay the $25,000 into a trust account was acceptable. Medicaid responded that the proposed procedure "does not comply with [Colo. Rev. Stat. § 25.5-4-301(5)(b)] as Medicaid's lien has not been satisfied." [Doc. 40 at ¶ 23; Doc. 45 at 3; Doc. 40-19; Doc. 40-20 at 1].

18.     On September 27, 2018, Esurance, referencing Medicaid's position, emailed Mr. Dahmer's counsel and stated that an interpleader action would be "the safest manner in which Esurance should proceed." [Doc. 40 at ¶ 27; Doc. 45 at 3; Doc. 40-21].

19.     Esurance filed an interpleader action in Denver District Court on November 9, 2018. In the interpleader action, Esurance admitted that it was liable for the $25,000 Policy limits and asked the court to resolve Mr. Dahmer's and Medicaid's competing claims to that money. [Doc. 40 at ¶ 29; Doc. 45 at 3; Doc. 40-22].

20.     Mr. Dahmer filed a motion to dismiss the interpleader action, which was denied. [Doc. 40 at ¶¶ 30–32; Doc. 45 at 3; Doc. 40-23]. After the motion to dismiss was denied, Mr. Dahmer and Medicaid settled Medicaid's claim for one third of $25,000. Esurance deposited the $25,000 in an interpleader registry and one third of the amount was disbursed to Medicaid. [Doc. 40 at ¶ 33; Doc. 45 at 3; Doc. 40-26; Doc. 40-27 at 1].

21.     On the same day that he filed the motion to dismiss the interpleader action, Mr.

Dahmer filed a tort action against Ms. Palm in Denver District Court.  [Doc. 40 at ¶ 34; Doc. 45 at

3; Doc. 40-30].

22.     Esurance defended Ms. Palm in the tort action.  [Doc. 40 at ¶ 36; Doc. 45 at 3; Doc.

40-31 at 85:21–24].[6]

23.     After a trial, a $3.7 million judgment was entered against Ms. Palm in the tort

action.  [Doc. 40 at ¶ 36; Doc. 45 at 3; Doc. 40-33 at 4].

24.     Ms. Palm entered into a *Bashor* agreement[7] with Mr. Dahmer, wherein Ms. Palm

agreed to sue Esurance for bad faith and to pay Mr. Dahmer any proceeds obtained in this lawsuit.

[Doc. 40 at ¶ 37; Doc. 45 at 3;[8] Doc. 40-34].

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so

that a rational trier of fact could resolve the issue either way.  A fact is material if under the

substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs.,

Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation omitted).

---

[6] When citing to deposition transcripts, the Court cites to the document number generated by the
CM/ECF system and the page and line numbers indicated on the transcript.

[7] "A *Bashor* agreement is a settlement reached between opposing parties after a judgment has been
obtained against the defendant.  The prevailing party agrees not to execute on the judgment in
exchange for the defendant's agreement not to appeal the judgment and instead to pursue claims
against third parties (and share any recovery with the original plaintiff)."  *Stone v. Satriana*, 41
P.3d 705, 708 n.2 (Colo. 2002) (citing *Northland Ins. Co. v. Bashor*, 494 P.2d 1292 (Colo. 1972)).

[8] Ms. Palm does not include Paragraph 37 in her list of admitted facts, *see* [Doc. 45 at 3], but
similarly does not raise any specific dispute with respect to Paragraph 37.  [*Id.*].  Accordingly, the
Court deems this fact undisputed.  *See* Fed. R. Civ. P. 56(e)(2).

"[I]t is not the party opposing summary judgment that has the burden of justifying its claim; the movant must establish the lack of merit." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1110 (10th Cir. 2009).  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point the Court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To satisfy this burden, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright et al., Federal Practice and Procedure § 2738 (4th ed. 2022) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation" to defeat summary judgment).  In considering the evidence, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  At all times, the Court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Adler*, 144 F.3d at 670.

## ANALYSIS

Esurance moves for summary judgment on Ms. Palm's single claim for common law bad faith on two bases.  First, Esurance argues that the Policy's "criminal acts" exclusion bars her claim.  [Doc. 40 at 9].  Second, Esurance argues that Ms. Palm cannot, as a matter of law, demonstrate that Esurance acted without a reasonable basis in the interpleader action and

surrounding events.  [*Id.* at 11].  Ms. Palm disagrees that summary judgment is warranted on either basis.  She contends that the exclusion does not bar her bad faith claim because (1) the exclusion is inapplicable; (2) the Policy provides mandatory coverage required under Colorado law; and (3) Esurance has waived any argument about the exclusion's applicability.  [Doc. 45 at 6–7].  Further, Ms. Palm maintains that whether Esurance acted in bad faith involves questions of fact not suitable for resolution on summary judgment.  [*Id.* at 12].  The Court addresses these arguments below.

## I.      The Criminal Acts Exclusion

Esurance contends that Plaintiff's claim is barred under the Policy's criminal acts exclusion, which provides that Esurance "ha[s] no duty to defend and do[es] not provide Liability Coverage for any 'insured'[] . . . For 'bodily injury' or 'property damage' that results from the criminal acts of an 'insured'."  [Doc. 40-1 at 2].  It asserts that the exclusion "bars Dahmer's claim against Palm if Dahmer's bodily injuries were sustained as a result of Palm's 'criminal acts,'" and that "[t]he undisputed facts establish that Dahmer's injuries resulted from Palm's criminal acts." [Doc. 40 at 10].[9]  Ms. Palm responds that the exclusion does not apply because she is "not seeking a defense and coverage from Esurance in this lawsuit," but is instead "suing her insurer for its bad faith conduct in handling Dahmer's claim against her that resulted in a multi-million dollar adverse judgment."  [Doc. 45 at 6].  For the first time in its Reply, Defendant suggests that "there can be

---

[9] The Court does not construe this argument as an assertion that the Policy somehow outright precludes Mr. Dahmer from asserting his underlying tort claim against Ms. Palm.  No Party has suggested that Mr. Dahmer is a party to the Policy, and Defendant cites no legal authority suggesting that an insurance policy's coverage provisions could preclude a non-party from asserting a tort claim against the insured.  Accordingly, the Court construes this as an argument that *coverage for* Mr. Dahmer's underlying claim against Ms. Palm is barred by the Policy.

no bad faith if there is no coverage."  [Doc. 57 at 2 (quoting *Tom's Urb. Master LLC v. Fed. Ins.*,
No. 20-cv-03407-PAB-SKC, 2022 WL 974654, at *8 (D. Colo. Mar. 31, 2022))].

However, "[b]ad faith breach of an insurance contract encompasses the entire course of
conduct" between the insured and the insurer, *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d
567, 572 (Colo. App. 2003), and a bad faith claim "exists independently from the liability imposed
by the insurance contract." *Flickinger v. Ninth Dist. Prod. Credit Ass'n of Wichita, Kan.*, 824 P.2d
19, 24 (Colo. App. 1991).  To that end, "Colorado recognizes the viability of a [common law]
claim of bad faith even if the express terms of the contract have been honored by the insurer."
*Dunn v. Am. Fam. Ins.*, 251 P.3d 1232, 1235 (Colo. App. 2010).  A common law bad faith claim
is premised on the implied duty of good faith and fair dealing: "[d]ue to the 'special nature of the
insurance contract and the relationship which exists between the insurer and the insured,' an
insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action
arising in tort.'"  *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 414 (Colo. 2004) (quoting
*Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003)).

In other words, where a plaintiff's bad faith claim is based not on the denial of coverage,
but on the defendant's alleged bad faith in the investigation, defense, handling, or settling of a
claim, the absence of coverage will not necessarily preclude a bad-faith claim.  *See Lua v. QBE
Ins. Corp.*, 421 F. Supp. 3d 1082, 1098 (D. Colo. 2019) (denying the defendant's motion for
summary judgment "to the extent the bad faith claims relate to [the d]efendant's obligations in
connection with its duty to defend" because "[w]hether an insurer 'acted unreasonably in
investigating, defending, or settling a claim brought by a third person against its insured under a
liability policy is 'a question of fact for the jury.'" (quoting *Est. of Morris v. COPIC Ins. Co.*, 192
P.3d 519 (Colo. App. 2008))); *see also MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558

F.3d 1184, 1193 (10th Cir. 2009) ("It is settled law in Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied and the plaintiff's *only claimed damages flowed from the denial of coverage*." (emphasis added)).  Indeed, in *Tom's*, the first-party bad faith case relied upon by Defendant, the plaintiff's common law bad faith claim was based on the "failure to pay benefits," not the insurer's claims-handling conduct.  *Tom's Urb. Master LLC*, 2022 WL 974654, at *8.

Here, Plaintiff alleges that Defendant breached its covenant of good faith and fair dealing by, *inter alia*, "[f]ailing to settle the claims asserted against Ms. Palm by Dahmer for the limits of the Policy after having the opportunity to do so," "[f]iling the Interpleader Action in a situation where it was neither necessary under the circumstances nor provided any protection to Ms. Palm," "[e]xposing Ms. Palm to a large adverse judgment in excess of the Policy's liability limits," and "[p]referring its interests over those of Ms. Palm."  [Doc. 6 at ¶ 33].  An "insurer's covenant of good faith and fair dealing includes the duty to act reasonably in investigating, defending, or settling a third-party claim," *State Farm Mut. Auto. Ins. Co. v. Goddard*, 484 P.3d 765, 772 (Colo. App. 2021), and "Colorado law imposes a duty on an insurer to fairly consider an insured's interests and potential personal liability, in addition to its own interests."  *Anderson v. Am. Nat'l Prop. & Cas. Co.*, No. 17-cv-03016-KMT, 2020 WL 406077, at *11 (D. Colo. Jan. 23, 2020) (citing *Lira v. Shelter Ins. Co.*, 903 P.2d 1147, 1150 (Colo. App. 1994)); *see also Zolman v. Pinnacol Assurance*, 261 P.3d 490, 501 (Colo. App. 2011) (explaining that the "equal consideration" standard applies in third-party bad-faith cases).  Because Ms. Palm's bad-faith claim is not based on the denial of coverage, the criminal acts exclusion does not bar her claim.[10]

---

[10] Based on this conclusion, the Court need not and does not reach Plaintiff's alternative arguments.

## II.   The Reasonableness of Esurance's Conduct

In the alternative, Esurance maintains that "as a matter of law," Ms. Palm cannot prove that Esurance acted unreasonably by filing the interpleader or with respect to "Esurance's related acts." [Doc. 40 at 11 (capitals omitted)].   Esurance contends that, to prevail on her claim, Ms. Palm must demonstrate that Esurance "pursu[ed] a groundless position that is not supported by any credible evidence." [*Id.* at 12 (quoting *Yale Condos. Homeowner's Ass'n, Inc. v. Am. Fam. Mut. Ins. Co., S.I.*, No. 19-cv-02477-KMT, 2021 WL 1222518, at *8 (D. Colo. Apr. 1, 2021))].   Ms. Palm challenges this position, arguing that Esurance relies on an incorrect legal standard in its reasonableness analysis. [Doc. 45 at 13].   In contrast, Ms. Palm argues that Esurance's conduct must be evaluated to see whether it was "reasonable under the circumstances." [*Id.*].   Furthermore, Plaintiff argues that she has submitted evidence from which a reasonable factfinder could conclude that Esurance acted unreasonably, so as to create a genuine dispute of material fact as to the reasonableness of Defendant's conduct. [*Id.* at 15–19].

### A.   Applicable Standard

To fully examine the Parties' respective arguments with respect to the appropriate legal standard, an examination of their arguments and the cited legal sources is helpful.   The Parties agree that *Farmers Group Inc. v. Trimble*, 691 P.2d 1138 (Colo. 1984), sets forth the basic reasonableness standard for third-party bad faith cases. *See* [Doc. 40 at 11; Doc. 45 at 12–13].   In *Trimble*, the Colorado Supreme Court recognized that "[g]iven the quasi-fiduciary nature of the insurance relationship, . . . the standard of conduct of an insurer in relation to its insured in a third party context must be characterized by general principles of negligence." *Trimble*, 691 P.2d at 1142.   "The question of whether an insurer has breached its duties of good faith and fair dealing

with its insured is one of reasonableness under the circumstances," i.e., whether the insurer had "any reasonable basis" for its actions. *Id.*

Then, Esurance cites *Yale Condominiums* for the proposition that "[a]cting 'without a reasonable basis' means 'pursuing a groundless position that is not supported by any credible evidence.'" [Doc. 40 at 12 (quoting *Yale Condos.*, 2021 WL 1222518, at *8)]. In *Yale Condominiums*, another court in this District stated that "[i]n Colorado, acting 'without a reasonable basis' has been construed to mean pursuing a groundless position that is not supported by any credible evidence." *Yale Condos.*, 2021 WL 1222518, at *8 (citing *Bd. of Cnty. Comm'rs v. Auslaender*, 745 P.2d 999, 1001 (Colo. 1987)). *Auslaender* involved the interpretation of a now-repealed state statute, section 13-16-121, which provided that

> The defendant in any civil action brought in any court of this state by a public entity . . . if the defendant is not itself a public entity, shall be entitled to recover against a public entity all court costs, all witness fees, and reasonable attorney fees as determined by the court if the court determines that said action *was brought without reasonable basis* or is frivolous.

Colo. Rev. Stat. § 13-16-121 (1983 Supp.) (emphasis added); *see also Auslaender*, 745 P.2d at 1001. The *Auslaender* court concluded that a claim or defense may be considered "groundless" if it is "not supported by any credible evidence at trial." 745 P.2d at 1001.

Some other courts in this District have relied upon this statement from *Auslaender* in the context of insurance bad faith claims to observe that "without a reasonable basis" "has been construed to mean pursuing a groundless position that is not supported by credible evidence." *See, e.g.*, *Gribowski v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-03115-MEH, 2022 WL 16855688, at *4 (D. Colo. Nov. 10, 2022); *Johnson v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-01712-MDB,

2022 WL 17976773, at *4 (D. Colo. Oct. 24, 2022); *Anderson v. Am. Nat'l Prop. & Cas. Co.*, No. 17-cv-03016-KMT, 2020 WL 406077, at *12 (D. Colo. Jan. 23, 2020).[11]

While this Court concurs that a plaintiff in an insurance case may establish bad faith by proving that the insurance company asserted a groundless claim or defense, *Auslaender*, 745 P.2d at 1001 (emphasis added), this Court respectfully disagrees this is the only theory of bad faith. Instead, the Court remains guided by the standard set forth *Trimble*: "the standard of conduct of an insurer in relation to its insured in a third party context [is] characterized by general principles of negligence," and "[t]he question of whether an insurer has breached its duties of good faith and fair dealing with its insured is one of reasonableness under the circumstances." *Trimble*, 691 P.2d at 1142. "To establish that the insurer breached its duties of good faith and fair dealing" in the third-party context, "the insured must show that a reasonable insurer under the circumstances would have paid or otherwise settled the third-party claim." *Goodson*, 89 P.3d at 415.

"What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury." *Vaccaro v. Am Family Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012); *Zolman*, 261 P.3d at 497. But "in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Id.* "The reasonableness of the insurer's conduct is determined objectively and is 'based on proof of industry standards.'" *Schultz v. Geico Cas. Co.*, 429 P.3d 844, 847 (Colo. 2018) (quoting *Goodson*, 89 P.3d at 415).

### B.      Whether Esurance Acted Reasonably Under the Circumstances

Esurance asserts a number of arguments concluding that as a matter of law, it acted reasonably in this case. *See* [Doc. 40 at 12–13]. First, it argues that, with respect to the entirety

---

[11] The Parties did not cite, and this Court could not locate, any authority from any Colorado state court applying *Auslaender* in the insurance context.

of its conduct, it acted reasonably because it immediately offered Mr. Dahmer an amount equal to Ms. Palm's Policy limits, and "as a matter of law none of its subsequent actions lacked any reasonable basis," relying on *Bernhard v. Farmers Insurance Exchange*, 885 P.2d 265 (Colo. App. 1994), *aff'd on other grounds*, 915 P.2d 1285 (Colo. 1996). [*Id.* at 13]. In the alternative, it asserts that (1) with respect to its decision to file the interpleader, the "Medicaid statutes establish three separate scenarios why Esurance's filing of the Interpleader did not lack any reasonable basis," [*id.*]; (2) with respect to its failure to settle Mr. Dahmer's claim, the "undisputed facts show that Esurance performed no settlement-related act which lacked any reasonable basis," [*id.* at 17–18]; and (3) it did not otherwise act without a reasonable basis or prioritize its interests over Ms. Palm's. [*Id.* at 19–20].

### 1.    *Bernhard*

First, Esurance relies upon *Bernhard* to argue that once an offer to settle at the liability-limit amount is made, an insurer has fulfilled its duties under the insurance policy and any of its later acts cannot be deemed unreasonable. [*Id.* at 13]. However, the Court is not convinced that *Bernhard* is dispositive here. In *Bernhard*, an insurer appealed a trial-court judgment against it, arguing that the trial court "erred in allowing the jury to assess damages that occurred to the insured after the date that [the insurer] made a 'full limits' offer to settle the tort claims being asserted." *Bernhard*, 885 P.2d at 267–68. More specifically, the insurer contended that "because [it] offered its full policy limits [in a settlement offer], any damages accruing to the insured thereafter could not, as a matter of law, have been caused by [its] previous actions, even if those actions were unreasonable." *Id.* at 269. The Colorado Court of Appeals disagreed with this argument, stating that while an offer to pay the full policy limits "may have the effect of *limiting* the damages that might otherwise result from a carrier's previous actions," it does not necessarily follow that

"damages occurring after the date of the [settlement] offer . . . were not caused by [the insurer's] previous negligence." *Id.* (emphasis added). In other words, "a later tender of the full policy limits will not excuse any prior unreasonable actions," *id.*, and an insured may nevertheless recover for damages incurred after the tender of a settlement offer if those damages are caused by the insurer's actions prior to making the offer. *Id.* at 270.

During this discussion, the *Bernhard* court stated that "because a carrier is under no duty to pay more than the amount required to be paid under the terms of the policy, once a tender of such amount is made, it has fulfilled its duty, and it cannot be said that its later actions were unreasonable." *Id.* at 269. This statement appears to be dicta, as there is no indication in the *Bernhard* decision that the plaintiffs had based their bad faith claim on any conduct of the insurer that occurred after its settlement offer, or that the insurer had argued on appeal that it was wrongfully assessed damages caused by its post-offer conduct. *See generally id.*

This Court could locate no other Colorado cases standing for this same proposition and finds that it is not entirely in line with other Colorado case law. An insurer's duties are not limited to paying an amount required under an insurance policy; rather, all insurers have a duty of good faith. *Goodson*, 89 P.3d at 414; *see also Flickinger*, 824 P.2d at 24 (a bad-faith claim "exists independently from the liability imposed by the insurance contract"). Thus, "the tort of bad faith breach of an insurance contract encompasses an entire course of conduct and is cumulative," *Dale v. Guar. Nat. Ins. Co.*, 948 P.2d 545, 551 (Colo. 1997), and in the third-party context, liability "arises when an insurance company acts unreasonably in investigating, defending, or settling a claim brought by a third person against its insured under a liability policy." *Goodson*, 89 P.3d at 414.

The process of "settl*ing* a claim" involves more than an initial settlement offer; here, Esurance's offer was conditioned on Mr. Dahmer executing the release. *See* [Doc. 40-12]. This is not a case where an insured has challenged its insurer's failure to settle at the policy limits generally; rather, Ms. Palm posits that it was unreasonable for Esurance to decline to put the $25,000 into a trust or qualified settlement fund, and presents evidence that had Esurance done so, Mr. Dahmer would have accepted the settlement offer and released Ms. Palm from liability. *See, e.g.*, [Doc. 45-5 at 2]. Under these circumstances, the Court cannot conclude that an initial settlement offer renders the insurer immune from liability for any post-offer bad-faith conduct, e.g., alleged unreasonable conduct that blocked the ultimate completion of settlement. While Esurance's settlement offer may constitute *evidence* in support of the reasonableness of its conduct, it does not *per se* insulate Esurance from liability. Accordingly, the Court cannot conclude that *Bernhard* precludes Plaintiff's bad-faith claim here.

### 2.   Esurance's Other Arguments

Next, Esurance offers various other arguments in support of its position that the Court should determine, as a matter of law, that it acted reasonably in this case. *See* [Doc. 40 at 14–20]. First, it argues that each of the statutes cited by Medicaid in its correspondence with Esurance "show[] that filing the Interpleader did not lack any reasonable basis." [*Id.* at 14–17].[12] Then, it

---

[12] More specifically, Esurance states that three statutes cited by Medicaid demonstrate that Esurance's conduct was reasonable. [Doc. 40 at 14–17]. ***First***, Esurance mentions § 25.5-4-205, which states that "[b]y signing an application for medical assistance, a person assigns to [Medicaid], by operation of law, all rights the applicant may have to medical support or payments for medical expenses from any other person." Colo. Rev. Stat. § 25.5-4-205(4)(a). ***Second***, Esurance invokes § 25.5-4-301(4), which states that "[i]f medical assistance is furnished to . . . a recipient . . . for which a third party is liable, [Medicaid] has an enforceable right against such third party for the amount of such medical assistance," and may enforce that right be instituting legal proceedings against the third party. Colo. Rev. Stat. § 25.5-4-301(4). Esurance asserts that "[u]nder this plain language, Medicaid had the right to sue directly the tortfeasor, Palm herself, for" the amount of Mr. Dahmer's medical bills, and "[b]y filing the Interpleader, Esurance

contends that its failure to settle could not have been unreasonable because "[b]ad faith failure-to-settle claims arise when an insurer unreasonably *declines* to timely settle at policy limits, and then the tort victim obtains an excess judgment against the insured."  [*Id.* at 17–18 (citing cases) (emphasis in original)].  And finally, it asserts that it "did not otherwise act without a reasonable basis," arguing that it acted reasonably in the underlying tort action.  [*Id.* at 19–20].

Respectfully, the Court believes that Esurance has not correctly framed the relevant inquiry before the Court at summary judgment.  Esurance's Motion reads as if it is trying to justify the legality of its actions, or prove the reasonableness of its actions, to *the Court*.  *See, e.g.*, [*id.* at 15 (arguing that an interpleader is an appropriate mechanism to resolve competing claims to insurance proceeds and thus, "as a matter of law Esurance's filing of the Interpleader . . . did not lack any reasonable basis"); *id.* at 17 ("Medicaid's express written position was that Esurance would violate [§ 25.5-4-301(5)(b)] if it . . . pa[id] the $25,000 into [a trust account] before Medicaid's claim was resolved.  Medicaid's position is supported by the statute's plain language.  Under these unique undisputed circumstances, as a matter of law filing the Interpleader did not lack any reasonable basis.") (footnote omitted)].  But as mentioned above, it is well-settled that "[w]hether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for the jury," and only in limited circumstances, where there are no genuine issues of fact, may the issue be determined as a matter of law.  *Vaccaro*, 275 P.3d at 759.

---

minimized the risk [that] Medicaid would sue Palm."  [Doc. 40 at 16].  **Third**, Esurance relies on § 25.5-4-301(5), which provides that "[n]o judgment, award, or settlement in any action or claim by a recipient to recover damages for injuries, where [Medicaid] has a lien, shall be satisfied without first satisfying [Medicaid's] lien."  Colo. Rev. Stat. § 25.5-4-301(5)(b).  Esurance contends that "Medicaid's express written position was that Esurance would violate subsection (5)(b) if" Esurance paid the $25,000 into a trust account before Medicaid's claim was resolved, and so "as a matter of law filing the Interpleader did not lack any reasonable basis."  [Doc. 40 at 17].

The singular issue underlying Plaintiff's bad faith claim is not whether Esurance's conduct complied with applicable statutes, or whether the requested course of action would have violated a statute, but whether Esurance's conduct was *reasonable under the circumstances*, in light of insurance industry standards.  For example, was it reasonable for Esurance to ask Medicaid whether "this procedure [i.e., putting the disputed funds into a trust account] [was] acceptable" to Medicaid prior to making its decision whether to deposit the funds into a trust account?  Esurance contends that it was.  *See* [Doc. 40 at 19 ("Given Medicaid's earlier demands and the statutes cited therein, Esurance did not lack any reasonable basis in seeking Medicaid's consent.")].  Ms. Palm, however, suggests it was not, and cites evidence in support of her position.  *See* [Doc. 45-13 at 20 (Plaintiff's expert opining that "Esurance was not legally required to get [Medicaid's] consent before agreeing to [the trust account] proposal.  By acceding to the wishes of [Medicaid], Esurance did nothing to protect [Ms.] Palm. . . .  At most, assenting to the wishes of [Medicaid] protected Esurance.")].[13]   And was it reasonable for Esurance to purportedly rely on Medicaid's interpretation of the statute to decline to deposit the funds and instead proceed with an interpleader action?  *See* [Doc. 40-20 at 1 (a Medicaid representative stating that "[t]he procedure to disburse these funds at this point does not comply with the statutory language as Medicaid's lien has not been satisfied")][14]; *see also* [Doc. 40-21 at 1 (Esurance's counsel referencing Medicaid's position and stating that "[i]t looks like an interpleader is the safest manner in which Esurance should proceed")]; *but see* [Doc. 40-17 at 1 (an Esurance claims adjuster responding to the request that

---

[13] The deadline to file motions under Rule 702 was April 11, 2022.  *See* [Doc. 39].  No such motions were filed.

[14] Medicaid's position was provided to Esurance by Erika Herrera of the Colorado Department of Health Care Policy & Financing, Third Party Liability & Recoveries Section.  *See* [Doc. 40-20 at 1].  It is unclear what Ms. Herrera's specific employment position was at the time she sent this letter or if Ms. Herrera is an attorney.

the funds be paid into a trust account that "[a]t this time we have our counsel reviewing this matter" and that she would "advise once we have an answer on how we will proceed")]. Fundamentally, irrespective of whether Medicaid's interpretation of Esurance's obligations was correct, Plaintiff questions whether Esurance's filing of an interpleader action *to protect itself*, instead of securing, or continuing its attempts to secure, a release and waiver on her behalf, violated its obligation of good faith *to her*. Ms. Palm's expert opines that such conduct violated insurance industry standards. *See, e.g.*, [Doc. 45-13 at 20, 21].

These are the types of questions that are relevant to the reasonableness inquiry—not whether Medicaid's statutory interpretation position on a particular course of conduct (that was never actually taken) was legally correct. The Court is thus unpersuaded by Defendant's attempt to frame this as an issue of law, rather than fact. Indeed, Esurance has not cited *any* legal authority definitively establishing that it would have been contrary to statute for it to place the $25,000 payment into a trust pending resolution of Medicaid's claim, so as to permit the Court to determine that it was reasonable as a matter of law for Esurance to decline to take that action. *Cf. Robles v. Am. Fam. Mut. Ins. Co.*, No. 19-cv-01748-WJM-STV, 2020 WL 5531510, at *6 n.9 (D. Colo. Sept. 15, 2020) (rejecting argument that where an insurer's basis for denying benefits is based on the insurer's interpretation of applicable law, the insurer's reasonableness is a question of law, because the insurer "ha[d] not cited any applicable law supporting its argument that it" had acted reasonably, and so "the question of whether [the insurer] acted reasonably remains a question of fact for the jury."). Instead, Esurance relies upon its *own* interpretation of the Medicaid statutes and *a Medicaid representative's* interpretation of the same. *See* [Doc. 57 at 11 ("because the statute requires Medicaid to be paid 'first,' paying the [trust] first (rather than paying Dahmer first) . . . would violate the statute")]; *see also* [Doc. 40-20]. Though it may be able to convince a

factfinder that it acted reasonably in light of the information before it, Esurance's subjective belief that it acted reasonably does not entitle it to judgment as a matter of law.

The Court finds this case analogous to first-party bad-faith cases in which an insurer defends its actions by arguing that the insured's claim was "fairly debatable." In these cases, even if the insurer was ultimately incorrect in its assessment of the compensability of a claim, the insurer may still be found to have acted in good faith if its belief was reasonable and it did not otherwise act in bad faith. *See Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010) ("[I]f a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable' (i.e., if reasonable minds could disagree as to the coverage-determining facts or law), then this weighs against a finding that the insurer acted unreasonably. This is true even if the insurer's defense ultimately proves to be unsuccessful[.] Thus, when an insurer maintains a mistaken belief that a claim is not compensable, it may still be within the scope of permissible challenge, even if the insurer's belief turns out to be incorrect.") (citations omitted).[15]

For example, in *Pham*, the defendant insurers denied the payment of underinsured motorist ("UIM") benefits "based on their understanding that, under [Colo. Rev. Stat. § 10-4-609(5)]," a separate lawsuit "[had to] be resolved before they [could] determine how much, if any, UIM benefits they owe[d] plaintiffs." 70 P.3d at 573. The court specifically stated that "whether [the insurers' interpretation was] a correct interpretation of the statute [was] not before" the court, and the limited question on review was "whether [the insurers] had a reasonable belief that they were

---

[15] However, even in these cases, fair debatability "is not a threshold inquiry that is outcome determinative as a matter of law," but rather, it simply "weighs against a finding that the insurer acted unreasonably." *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 990 (Colo. App. 2015), *aff'd*, 418 P.3d 501 (Colo. 2018).

not obligated to pay UIM benefits" pursuant to the subject statute.  *Id.*   In *Pham*, the court ultimately concluded that the insurers' position was reasonable, noting that "[t]he coverage issues [were] complicated and debatable, and the facts do not place the claim squarely within the statute or the respective insurance policies," and there was "no case law directly on point."  *Id.*

This case is also analogous to *Goodman v. State Farm Mutual Automobile Insurance Co.*, No. 13-cv-01376-WJM-MJW, 2014 WL 5262018 (D. Colo. Oct. 15, 2014).  In this first-party case, the insurer argued that it could not have acted in bad faith because it had a sixty-day "safe haven" under applicable regulations to investigate the plaintiff's claim.  *Id.* at *4.  While the Court noted that "Colorado courts have found that the Insurance Regulation's 60-day time limit is evidence of what is reasonable in the insurance business, . . . no court has determined that litigation commenced before the sixty-day period expires is a complete bar to litigation."  *Id.* at *5.  Indeed, even the insurer's own expert "noted that the Insurance Regulation's sixty-day time period is a 'guideline' that 'enables the regulatory authority to impose penalties, but doesn't necessarily apply to a court of law.'"  *Id.* (alterations omitted).  Because the plaintiff had offered evidence supporting a finding that the insurer's delay in settling her claim was unreasonable, the court concluded that "the issue of reasonableness [was] a question for [the] jury."  *Id.*

*Pham* and *Goodman* are distinguishable from this case in important ways—namely, those cases are first-party bad-faith cases, wherein the plaintiffs were required to prove that "the insurer[s] acted both unreasonably *and with knowledge of or reckless disregard of [their] unreasonableness*."  *Pham*, 70 P.3d at 572 (emphasis added).  "If an insurer *does not know* that its [conduct] is unreasonable and does not act with reckless disregard of a valid claim, the insurer's conduct would be based upon a permissible, albeit mistaken, belief that the claim is not compensable."  *Id.*  Thus, in *Pham*, for example, "*the uncertainty concerning* [the insurers']

liability to pay UIM benefits compel[led] the conclusion that they did not act in bad faith . . . by declining to pay benefits." *Id.* at 573–74 (emphasis added). In other words, because there was uncertainty with respect to the interpretation of applicable law, the plaintiff could not prove that the insurers knowingly or recklessly disregarded the unreasonableness of its conduct. *See generally id.*; *see also, e.g.*, *Anderson v. State Farm Mut. Auto. Ins. Co.*, 416 F.3d 1143, 1148 (10th Cir. 2005) ("State Farm's explanation of UM/UIM coverage was based upon a reasonable, albeit mistaken, belief that under the law owned-but-not-insured exclusions in insurance policies providing UM/UIM coverage were valid. Because State Farm did not act unreasonably, Anderson's bad faith claim necessarily fails.") (citation omitted).

In this third-party bad-faith case, Ms. Palm does not need to prove that Esurance acted knowingly or recklessly; rather, she must demonstrate that it acted unreasonably under the circumstances—for example, that "a reasonable insurer under the circumstances would [not] have" relied on Medicaid's statement and would not have refused to pay the $25,000 into a trust account to secure Mr. Dahmer's release. *Trimble*, 691 P.2d at 1142; *Goodson*, 89 P.3d at 415. Unlike *Pham*, Esurance cannot win solely on an argument that *it believed* its conduct was legally correct. Rather, Esurance must prove that its conduct was reasonable under the circumstances, in light of industry standards. *Schultz*, 429 P.3d at 847.

And this is not a determination that can be made by the Court, particularly in light of the current record, wherein Plaintiff has submitted expert testimony suggesting that the proposal that Esurance pay the $25,000 into a trust account "is the *common and accepted process* for dealing with Medicaid and other medical liens." [Doc. 43-15 at 18 (emphasis added)]; *see also* [*id.* at 19 ("It is a standard and accepted practice in the liability insurance industry for insurers to pay settlement proceeds to the claimant's attorney's trust account with an agreement and

acknowledgement that the claimant's attorney will not disburse any funds out of trust until any lien is satisfied."); *id.* at 15 ("Esurance violated insurance industry standards and its obligation to Palm when, instead of settling with Dahmer and getting him to sign a release discharging Palm from the multi-million-dollar excess exposure, it sued [Mr. Dahmer].")].[16]

Furthermore, Esurance has not cited any expert testimony or other evidence establishing that its conduct complied with industry standards. *See generally* [Doc. 40]; *see also Jewell v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-02536-KLM, 2020 WL 1627348, at *5 (D. Colo. Feb. 26, 2020) ("Defendant here had the initial burden in the [motion for summary judgment] of either (1) providing evidence that Defendant complied with industry standards applicable to the facts of this case, or (2) pointing out that Plaintiff lacked evidence of an objective industry standard applicable to the facts of this case showing that Defendant acted unreasonably.  Defendant failed to do so."); *Wheatridge Off., LLC v. Auto-Owners Ins. Co.*, 578 F. Supp. 3d 1187, 1206–07, 1214 (D. Colo. 2022) ("The reasonableness of Auto-Owners' conduct . . . must be evaluated in light of industry standards yet Auto-Owners present[ed] no evidence to demonstrate that its reliance on its own experts meets those industry standards.").  And even if Esurance had done so, any such evidence would simply compete with Plaintiff's contrasting evidence that Esurance acted unreasonably by not "settling the case by securing Dahmer's signature on a release discharging Palm's liability" and instead "acceding to the wishes of" Medicaid.  [Doc. 45-13 at 15, 20].[17]

---

[16] The Court notes that the expert's report states, in a footnote, that "David Smith of [Medicaid] testified in his deposition that if Dahmer signed a release and Esurance held the $25,000 until resolution of the lien, he does not believe that would have violated the [Medicaid] statute."  [Doc. 45-13 at 18 n.1].  Plaintiff has not attached Mr. Smith's deposition transcript to her Response and does not otherwise rely on it, and the Court does not consider it.

[17] In its Reply, Esurance challenges Ms. Palm's reliance on the expert's report and the expert's opinion that Esurance "squandered a legitimate opportunity" to settle Mr. Dahmer's claim.  [Doc. 57 at 10 (quoting Doc. 45 at 18)].  It asserts that "[t]he Response does not state when this alleged

By focusing only on its subjective belief that its actions were legally correct, Esurance has failed to meet its burden on summary judgment to establish that there is no genuine dispute of fact as to whether its conduct was reasonable in light of industry standards. The legality of Esurance's conduct does not necessarily demonstrate reasonableness—indeed, an insurer's conduct can be compliant with insurance statutes and still be unreasonable.[18] *Cf. Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 894 (10th Cir. 2016) (applying Colorado law and stating that "compliance with [Colorado insurance regulations] does not mean that the insurer acted reasonably"); *Bruce v. Pac. Specialty Ins. Co.*, No. 15-cv-01323-RM-CBS, 2016 WL 11693598, at *12 (D. Colo. Aug. 15, 2016) (compliance with regulations is "relevant to whether [the insurer] acted unreasonably, but [does] not show that Defendant acted reasonably as a matter of law"). "[T]he determination of the sufficiency of [Esurance's conduct] turns on the totality of the circumstances and is inherently factual," *O'Sullivan v. Geico Cas. Co.*, 232 F. Supp. 3d 1170, 1183 (D. Colo. 2017), and cannot be determined as a matter of law on summary judgment.

The Court is similarly unpersuaded by Esurance's argument that its conduct was reasonable as a matter of law because "[b]ad faith failure-to-settle cases arise when an insurer unreasonably *declines* to timely settle at policy limits, and then the tort victim obtains an excess judgment against the insured." [Doc. 40 at 17 (emphasis in original)]. It continues: "[t]his unusual case stands in

---

opportunity [to settle] existed," and argues that there was no such opportunity. [*Id.* at 10–11]. This simply introduces another question of fact that must be answered by a jury, not the Court.

[18] Similarly, the Court is unpersuaded by Esurance's reliance on *McLeod*, which addressed whether the trial court lacked jurisdiction to enter an order and whether the order was void or voidable. *See McLeod v. Provident Mut. Life Ins. Co. of Phila.*, 526 P.2d 1318, 1319–22 (Colo. 1974). The fact that the *McLeod* case was initiated as an interpleader action "to determine the proper beneficiaries of the proceeds of a life insurance policy," *id.* at 236, has no bearing on whether Esurance's conduct was reasonable. Indeed, Plaintiff does not appear to argue that the filing of the interpleader was *legally erroneous*, *see generally* [Doc. 40], and the fact that an interpleader action was available to Esurance does not necessarily render Esurance's conduct *reasonable* under the circumstances of this case and in light of industry standards.

sharp contrast to the typical bad faith settlement case," noting that it agreed to Mr. Dahmer's demand for the policy limits and suggesting that it was Mr. Dahmer who failed to secure finalization of the settlement. [*Id.* at 18]. The Court construes this as an argument similar to Esurance's contention under *Bernhard*: because it offered $25,000 to settle with Mr. Dahmer, it did not "decline" to settle the claim at the Policy limits and did not act in bad faith. But Defendant has cited no case law demonstrating that bad faith claims based on a failure to settle are *only* available where the insurer affirmatively refused to settle at the policy limits, and the fact that many failure-to-settle cases involve those circumstances does not necessarily render Plaintiff's bad faith claim untenable. And, in any event, a reasonable jury could conclude that by failing to take steps that would have secured a finalized settlement agreement and release of Mr. Dahmer's claims against Ms. Palm, as Ms. Palm argues, Esurance *did*, indeed, "decline" to settle at the Policy limits. As explained above, Esurance has directed the Court to no evidence establishing that it acted consistently with insurance industry standards. *See Jewell*, 2020 WL 1627348, at *5. Summary judgment is thus not appropriate on this basis,[19] and the Motion is **DENIED**.

However, the Court does have concerns about the proper presentation of evidence and the correct framing of the issues at trial in light of Esurance's position that it acted reasonably because it complied with the law and, in its view, avoided violating the law. The Court stresses that the issue in this case is **whether Esurance acted reasonably**—which can be *supported* by evidence

---

[19] For the reasons set forth in this Order, Esurance's argument that with respect to its other challenged conduct—e.g., "[e]xposing Ms. Palm to a large adverse judgment in excess of the Policy's liability limits" and "[p]referring its interests over those of Ms. Palm," *see* [Doc. 6 at ¶ 33]—it did not act unreasonably because "[g]iven Medicaid's earlier demands and the statutes cited therein, Esurance did not lack any reasonable basis in seeking Medicaid's consent," [Doc. 40 at 19], does not entitle it to summary judgment. Again, Esurance's own subjective opinion that it acted reasonably does not permit this Court to conclude as a matter of law that Esurance acted reasonably, especially where there are genuine issues of material fact as to the reasonableness of Esurance's conduct.

that, in its view, it was legally required to take the steps it took—but the Court emphasizes that **the jury will not be tasked with interpreting laws, deciding whether Esurance complied with the referenced statutes not governing this case, or deciding whether placing the disputed funds into a trust account would have violated the law**.  Because the framework of this case suggests that there may be legal elements to the factual issues presented to the jury, and because it appears that Esurance may seek to reference applicable law or invoke legal principles at trial, the Court finds additional briefing on this issue appropriate.  Accordingly, on or before **March 31, 2023**, the Parties **SHALL**, after a substantive meet and confer, submit a joint status report outlining the Parties' respective positions as to any issues that may arise at trial with respect to the apparent mixed questions of law and fact in this case; the Parties' plans for presenting this evidence to the jury; and any safeguards, such as limiting instructions, that may be necessary at trial; as well as each Party's response to the other Party's position(s).  The Parties shall be prepared to discuss their positions at the April 7, 2023 Trial Preparation Conference.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)   Esurance's Motion for Summary Judgment [Doc. 40] is **DENIED**; and

(2)   On or before **March 31, 2023**, the Parties **SHALL** submit a joint status report addressing the issues identified above.

DATED:  March 14, 2023                          BY THE COURT:

Nina Y. Wang
United States District Judge